UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN R. ERICKS,

    Plaintiff,

v.

STATE OF WASHINGTON DEPARTMENT OF FISH AND WILDLIFE, et al.,

    Defendants.

CASE NO. C15-5066 BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants State of Washington ("State"), the Washington Department of Fish and Wildlife ("DFW"), Loc Do ("Officer Do"), and Jane Doe Do's (collectively "Defendants") motion for summary judgment (Dkt. 38). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On January 14, 2015, Plaintiff John Ericks ("Ericks") filed a complaint against Defendants in Thurston County Superior Court. Dkt. 4 at 7–11. Ericks asserted causes of action for false imprisonment, violation of civil rights, outrage, and negligence. *Id*.

On January 30, 2015, Defendants removed the matter to this Court. Dkt. 1.

ORDER - 1

1       On March 24, 2015, the Court granted Ericks's attorney's motion for leave to

2 withdraw, and Ericks is now proceeding pro se. Dkt. 18.[1]

3       On September 16, 2015, the Court granted Defendants' motion to dismiss Ericks's

4 claims against the State, DFW, and Officer Do in his official capacity based on Eleventh

5 Amendment immunity. Dkt. 32.

6       On January 6, 2016, Defendants filed a motion for summary judgment on Ericks's

7 civil rights, outrage, and negligence claims. Dkt. 38. Ericks filed numerous responses.

8 Dkts. 41–45. On January 29, 2016, Defendants replied. Dkt. 46. On February 2, 2016,

9 Ericks replied (Dkt. 48) and Defendants replied (Dkt. 49).

## II. FACTUAL BACKGROUND

11       This suit rises out of the Washington State Patrol's ("WSP") arrest of Ericks in

12 November 2011. Officer Do is a DFW officer stationed in Grays Harbor County,

13 Washington, which is the same county where Ericks resides. Dkt. 40, Declaration of Loc

14 Do ("Do Dec."), ¶ 2. Officer Do asserts that, in October of 2011, he assisted another

15 unidentified officer locate Ericks's residence so that the "other officer" could serve legal

16 papers on Ericks. *Id.* The other officer also informed Officer Do of Ericks's vehicle's

17 license plate number and that Ericks's license was suspended. *Id.*, ¶ 3. Sometime later,

---

[1] While the Court has limited discretion to appoint an attorney to represent a pro se party in a civil action for damages, the Court encourages Ericks to either retain counsel or seek pro bono assistance with his remaining claim. When important constitutional issues are present, it is a better use of resources to consider all authorities and issues at the trial level instead of relying on appointed appellate counsel. *See*, *e.g.*, *Tarabochia v. Adkins*, 766 F.3d 1115 (9th Cir. 2014).

1  Officer Do ran a computer check to see if the service of legal documents had been

2  recorded and verified that Ericks's license was still suspended. *Id.*

3       On November 12, 2011, Officer Do stopped Ericks. Officer Do observed the

4  vehicle bearing Ericks's license plate number. *Id.*, ¶ 4. Do pulled alongside the vehicle

5  and recognized Ericks as the driver. *Id.* Do activated his police lights, and Ericks pulled

6  over. *Id.* After Do approached Ericks and Ericks failed to produce a valid license, Do

7  returned to his DFW vehicle and confirmed through the WSP that Ericks's license was

8  suspended. *Id.*, ¶ 5. Do returned to Ericks's vehicle and cited Ericks for driving while

9  license suspended. *Id.* Officer Do contends that when he was explaining the citation to

10  Do, he smelled alcohol and noticed other signs that Ericks was under the influence. *Id.*, ¶

11  6. Do contacted the WSP and requested an assisting officer. *Id.* Eventually, a WSP

12  officer arrived and arrested Ericks for driving under the influence. *Id.*

13       At some point charges were filed against Ericks, and Ericks filed a motion to

14  suppress the evidence obtained as a result of Do's stop. On May 21, 2014, the state court

15  granted Ericks's motion concluding that Officer Do "had no reasonable and articulable

16  suspicion of criminal activity and therefore no probable cause to pull [Ericks] over." Dkt.

17  43-7. That order also identifies the other officer as Tumwater Officer Don Stevens (*Id.*),

18  who Ericks alleges was having an ongoing affair with Ericks's wife (Dkt. 48 at 2).

19                         **III. DISCUSSION**

20       Defendants move for summary judgment on Ericks's civil rights, outrage, and

21  negligence claims. Dkt. 38.

22

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

1  nonmoving party may not merely state that it will discredit the moving party's evidence
2  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*
3  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,
4  nonspecific statements in affidavits are not sufficient, and missing facts will not be
5  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

6  **B.   Civil Rights**

7       Section 1983 is a procedural device for enforcing constitutional provisions and
8  federal statutes; the section does not create or afford substantive rights.  *Crumpton v.*
9  *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  In order to state a claim under section 1983,
10 a plaintiff must demonstrate that (l) the conduct complained of was committed by a
11 person acting under color of state law and that (2) the conduct deprived a person of a
12 right, privilege, or immunity secured by the Constitution or by the laws of the United
13 States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by*
14 *Daniels v. Williams*, 474 U.S. 327 (1986).

15      In this case, Ericks asserts that Defendants violated his civil rights by engaging in
16 the illegal traffic stop.  Dkt. 4 at 9–10.  Defendants argue that they are entitled to
17 qualified immunity.  Dkt. 38 at 7–11.  Qualified immunity shields government officials
18 from civil liability unless a plaintiff demonstrates: "(1) that the official violated a
19 statutory or constitutional right, and (2) that the right was 'clearly established' at the time
20 of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).  The Court
21 has discretion to decide "which of the two prongs of the qualified immunity analysis
22

1  should be addressed first in light of the circumstances in the particular case at hand."

2  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

3  **1.     Constitutional Right**

4  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  Given the Fourth Amendment's core purpose of protecting against arbitrary intrusions by government officials, *see Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979), "[a] search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing."  *United States v. Fraire*, 575 F.3d 929, 931 (9th Cir.2009) (citing *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000)).  Because stopping an automobile and detaining its occupants, "even if only for a brief period and for a limited purpose," constitutes a "seizure" under the Fourth Amendment,  *Whren v. United States*, 517 U.S. 806, 809–10 (1996), an official must have individualized "reasonable suspicion" of unlawful conduct to carry out such a stop.  *See Prouse*, 440 U.S. at 663; *United States v. Brignoni–Ponce*, 422 U.S. 873, 884–86 (1975).

In this case, Defendants' arguments miss the mark on numerous grounds.  First, Defendants' reliance on state law does not necessarily define the boundaries of a federal constitutional right.  Dkt. 38 at 910 (citing *State v. Quintero-Quintero*, 60 Wn. App. 902, 904 (1991)).  Moreover, it is unclear whether the court in *Quintero-Quintero* justified the initial stop of defendant's vehicle based on the officer's prior knowledge of defendant's license suspension or defendant's erratic driving.  60 Wn. App. at 903 ("As Sgt. Crist proceeded to follow this vehicle he observed improper [lane] travel in that the driver was

1 observed to lean forward and swerve his vehicle nearly into a parked car."). Erratic
2 driving is not present in this case, which makes Defendants' authority even less
3 persuasive.

4     Second, Defendants fails to address the state court's conclusions of law. Absent
5 authority to the contrary, it would seem that this Court should give some deference to the
6 conclusion that Officer Do had no "reasonable or articulable suspicion of criminal
7 activity." Dkt. 43-7. Based on these insufficiencies, Defendants have, at this time, failed
8 to show that they are entitled to judgment as a matter of law. Therefore, the Court denies
9 the motion without prejudice on this issue of violating Ericks's constitutional rights.

10     **2.**    **Clearly Established**

11     "For a right to be 'clearly established,' its 'contours must be sufficiently clear that
12 a reasonable official would understand that' his or her actions violated that right."
13 *Tarabochia*, 766 F.3d at 1125 (9th Cir. 2014). To meet this standard "the very action in
14 question" need not have "previously been held unlawful." *Chappell v. Mandeville*, 706
15 F.3d 1052, 1056 (9th Cir. 2013) (internal quotation marks omitted). This is particularly
16 true in the Fourth Amendment context, where the constitutional standard of
17 "reasonableness" demands a fact-specific inquiry. *Mattos v. Agarano*, 661 F.3d 433, 442
18 (9th Cir.2011). Under this second prong, we therefore consider "whether a reasonable
19 officer would have had fair notice that [the action] was unlawful[.]" *Chappell*, 706 F.3d
20 at 1056–57 (internal quotation marks omitted); *accord A.D. v. Calif. Highway Patrol*, 712
21 F.3d 446, 454 (9th Cir. 2013).

22

In this case, Defendants argue that the very act in question has never been declared unlawful. Specifically, Defendants argue that

> [p]laintiff cannot show that the law governing prior verification of a suspended driver's license was so well-established that Officer Do violated a clearly established statutory or constitutional right when he had previously verified that Plaintiff's license was suspended, saw Plaintiff driving, stopped Plaintiff, verified Plaintiff's license was still suspended, and cited Plaintiff for [driving while license suspended].

Dkt. 38 at 11. Contrary to Defendants' position, the Ninth Circuit has recently held that

> It was clearly established on [March 23, 2007] that the Tarabochias had a Fourth Amendment right not to be stopped by WDFW officers while driving on a highway absent reasonable suspicion the Tarabochias had or were about to engage in unlawful activity.

*Tarabochia*, 766 F.3d at 1125. In light of the current legal precedent and the state court's conclusion that Officer Do had no reasonable suspicion of criminal activity, the Court is unable to conclude, at this time, that the law of reasonable and articulable suspicion was not clearly established at the time of the stop. Defendants' briefing on the state of the law is insufficient to determine whether Officer Do had fair warning that his actions would be unlawful.

Furthermore, Officer Do has provided a fact to this Court that apparently was not provided to the state court. In suppressing the evidence, the state court found that Officer Do "did not obtain independent verification that [Ericks's] license was suspended." Dkt. 43-7 at 1. Now, however, Officer Do asserts that, after his conversation with Officer Stevens, he ran a computer check to verify that Ericks's license was suspended. Do Dec., ¶ 3. It is unclear exactly when this happened because Officer Do asserts that it occurred "[a]pproximately a few weeks later." *Id*. In order to determine whether Officer Do's

1 actions were reasonable, the factual record should clearly reflect when Officer Do knew
2 relevant information relating to Ericks's license suspension.  Therefore, in the absence of
3 legal and factual support, the Court denies Defendants' motion without prejudice on this
4 issue as well.

5 **C.    Outrage**

6       "The elements of the tort of outrage are (1) extreme and outrageous conduct, (2)
7 intentional or reckless infliction of emotional distress, and (3) the plaintiff actually
8 suffers severe emotional distress." *Saldivar v. Momah*, 145 Wn. App. 365, 390 (2008)
9 (citing *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003)).  The plaintiff must allege conduct
10 that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible
11 bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized
12 community.'"  *Wolf v. Scott Wetzel Servs., Inc.*, 113 Wn.2d 665, 677 (1989) (quoting
13 *Guffey v. State*, 103 Wn.2d 144, 146 (1984), *overruled on other grounds by Savage v.*
14 *State*, 127 Wn.2d 434, 443 (1995)).  "Whether conduct is sufficiently outrageous is
15 ordinarily a question for the jury, but initially it is the responsibility of the court to
16 determine if reasonable minds could differ on whether the conduct was so extreme as to
17 result in liability."  *Keates v. City of Vancouver*, 73 Wn. App. 257, 263 (1994).

18       In this case, Ericks's claim is based on the allegation that Defendants were using
19 their professional law enforcement positions to further a personal agenda.  Ericks alleges
20 that, because of Officer Stevens's involvement with Ericks's wife, the officers abused
21 their positions of authority in a vengeful manner toward Ericks.  The Court is unable to
22 conclude that reasonable minds would differ whether this alleged conduct rises to the

1 level of actionable outrage. Abusing a position of power to further a personal affair is "reprehensible, and only a rapscallion in official raiment would do such a thing." *Devereaux v. Abbey*, 263 F.3d 1070, 1082 (9th Cir. 2001) (Fernandez, J., concurring). However, a simple traffic stop without probable cause does not rise to the level of conduct that goes beyond all possible bounds of decency in society. Therefore, the Court grants Defendants' motion on Ericks's outrage claim.

**D.  Negligence**

The "essential elements of actionable negligence are: (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury." *Pedroza v. Bryant*, 101 Wn.2d 226, 228 (1984).

In this case, Defendants argue that Ericks has failed to establish a negligence claim because he fails to establish either a duty or causation. The Court agrees with respect to duty. The public duty doctrine shields the state and the officer in his official capacity, and Ericks has failed to establish any duty on behalf of Officer Do individually. With regard to causation, the Court disagrees with Defendants. Officer Do was a "but for" cause of the arrest because but for the illegal stop, WSP would not have arrested Ericks. On the issue of proximate cause, Defendants have failed to offer sufficient authority or argument to fully consider the policy determinations present in this question of law. Regardless, the duty element is dispositive. Therefore, the Court grants Defendants' motion on Ericks's negligence claim.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment (Dkt. 38) is **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 19th day of February, 2016.

BENJAMIN H. SETTLE
United States District Judge